thank you good morning your honor and may it please the court my name is Jay Lefkowitz representing the appellants and I'd like to reserve two minutes for rebuttal thank you this is a classic case of overreach California have a lot of tools with which to try to address its concern with the high cost of prescription drugs in the state it can impose price caps it can require all cases but the one thing it cannot do which even the trial judge said would likely violate the dormant Congress clause is to regulate an entirely out of state settlement agreement just because that settlement may have an effect downstream in the state that's exactly what AB 824 does and under this courts en banc decision in San Francisco it's more recent decision in the Daniel Sharpe smart case both of which follow the Supreme Court field Healy and Baldwin cases it's a straightforward application and the test and I ask this question California in their brief references naval bar dairies eat crap food which says at least with respect to California's antitrust and unfair competition statutes it can regulate and occurring outside California when that has a in-state effect could you address their argument on that point absolutely your honor this court recognized in Knievel barred where it noted the importance of the fact that an integral component of the bid-rigging scheme that the plaintiffs were challenging under the Cartwright Act took place in California the court went out of its way to say it survived the Commerce Clause challenge because part of what was violating the Commerce Clause was the in-state conduct the in-state sale that's consistent with the way this court has looked at the Cartwright Act in the AT&T mobility case as well we're not saying that California doesn't have a lot of authority obviously under the Sherman Act even to regulate out-of-state settlement arguing that they could regulate even if the Satan Oh sales took place in California in other words I read their brief is arguing that if sales took place that they they want to protect California consumers from sales in California that were based on these collusive as they say call them settlements so to answer first the statute actually on its face doesn't in any way require any in-state sale but even if somehow you were to construe it that way or California were to say we'll only enforce it that way the conduct that it would still be regulating is the out-of-state conduct and that's exactly what took place in the Baldwin case which was the unlikely unanimous decision of the Lochner court it said you can't sell milk in New York State if you enter into the type of transaction that we say is invalid in Vermont the trigger of a sale in New York State doesn't save the statute what would save the statute would be if this were like the foie gras or the shark fin case where what is in fact being just regulated is in-state activity and this court in the Rocky Mountain decision and Judge Hurwitz in in in your Oregon parallel case recognized the distinction what made Rocky Mountain acceptable this court pointed out was that it did not impose penalties for non-compliant conduct that takes place outside of the state that's the dividing line and that's why this court in Knievel Bard went out of its way to point out that part of what violated the Cartwright Act was the in-state activity if California brought a Cartwright Act case with respect to a settlement they would actually have to prove that the in-state sales violated the state law that the in-state sales were anti-competitive and sure there might be some incipient conduct that was relevant to the case that took place out of the state there might be some burden outside of the state but California would not be regulating outside of the state and that's the price line. Mr. Lefkowitz I'm sorry I want to make sure Judge Akuda's I thought she had another question. I wanted to turn to the threshold issue of standing but so without focusing on the legal test for a second let me just ask you what your clients declarations actually say. Sure. Let me tell you how I read them and tell me if I'm wrong. None of them say they've ever entered into one of these agreements in the past correct? They don't say that because obviously all the settlements they've ever entered into are confidential. I know but they don't they they could surely say without describing any specific settlement we've used this tool in the past but they do not say that do they? That's correct this court though respectfully could take no I'm not asking about the legal test okay I'll let you you can argue the legal test I just want to make sure I know what they say nor do they say that we have any specific plan to enter into such an agreement in the future correct? I'm not sure I would completely agree but I'm sure I think you're okay okay nor do they say nor do they say a patent holder has called us up and said gee would you like to settle a case on this basis? They haven't said those words that's correct. Okay so focusing now solely on now I want to ask you the preliminary injunction which is that you have to face some imminent irreparable harm and what's the image why was why was the judge why did the judge abuse his discretion in saying as as you suggest maybe you've got a good dormant Commerce Clause claim but I don't see any irreparable harm pendent de laite here. So I'd like to give you two parts to that answer one I want to start with the affidavit and then go to the the legal test. I'll focus on both the Coochlee Declaration and the Matsik Declaration ones that ER 153 and 4 and the others at 157 they both basically say that in light of the massive penalties on the enforcement of a threat of ADA 24 these two companies are now going to have to incur significant costs continuing to litigate cases that they would otherwise settle. Now I hear that they're going to do it they say it's likely that they would do that. Sure and if I may your honor there is these this is not a situation like in the Thomas case for example where you had innkeepers who said we're not going to change our speculative. We are dealing with active ongoing patent cases and the affidavits do declare that there are dozens if not hundreds of active patent cases these companies are involved in. Once you're in a patent case there are only two options it's a binary world you either enter into a settlement agreement or you litigate to conclusion and although they haven't disclosed the terms of reported cases that address patent settlements in the activist and cart write-out context where the settlements are disclosed because they're being litigated every single one of those settlements has an exclusive license it's impossible to settle a case a patent case if the generic can't get the same exclusivity in settlement that he would get or she would get if they won the case the federal Hatch-Waxman. I'm currently engaged in settlement negotiations in some confidential case I I would be inclined to enter into the a settlement agreement which has been offered to me by the brand company but I'm not going to I'm going to pause or I'm not going to take that step because I'm concerned about the imposition of penalties under AB 824. I didn't see anything even close to that. If there was one declaration that said that I might think well there's at least one indication of an imminent impending injury but I didn't see that. What do you think is the closest? I think when the will be forced to continue to litigate that means they are changing their economic behavior. Our injury is just like the trappers injury in the Davis case. Is this the only way to settle a case? I mean you talked about licensing agreements but this statute doesn't prohibit licensing agreements as long as the licensee doesn't also agree to restrict his sales or his research. Let that way no if I'm litigating with a patent holder and and I settle that litigation by saying I'll pay you for a license and I'll continue to sell my my goods in California. Have I violated the statute? You would unless you were unless you got an immediate entry. In other words the only way that you could settle a statute without a license. That's what a license does. A pure license here more than a license does. We're litigating and I say look let's stop fighting give me a license and they say fine you have a license you can now sell. That doesn't violate the statute does it? If it's an exclusive license it does violate the statute. How does it violate the statute? Because the definition of a license is something of value we all agree about that look at B. In addition you must agree to forego research development manufacturing marketing or sales of the product and I posited a case where the license allows you to sell your generic in California. Is there any problem under the statute? There isn't if the entry is that day but the problem is that if if there's an entry that is that day there's never a settlement because you have a patent case the brand wants to continue to market its drug. They get the monopolistic profit for some period of time and then give a the generic a license immediately and perhaps require them to give some part of the profits or whatever some other economic deal then the law wouldn't prohibit that if I'm understanding it correctly. As long as there is an exclusive license and the brand is letting the generic have exclusivity which is the very same thing that Congress guarantees under the Waxman Act then this statute even if you could come in the market significantly before in a settlement you would otherwise come in if you actually successfully beat the patent this statute says it's unlawful and see I don't know where you find that in the statute. Sub B says you must agree that your client to generic to forego research development manufacturing or marketing or sales of the product for a period of time and I'm positing a settlement where the patent holder says buy a license from me and you can start marketing right away no restriction that would not doesn't violate the statute does it? That would not be a settlement your honor that would be the brand company saying before I even get to trial. I'll charge you ten dollars for the license rather than the million dollars I wanted to charge you at the beginning. I'll give you the license on favorable terms. There's all kinds of settlements of cases that don't involve agreements that violate the statute. Can we agree on that? I think we could agree on that but we I don't think that there there has I don't think you can settle a brand generic case without getting an exclusive license and some period after the date on the settlement before which the generic can market the drug and in this the way the statute works if you have a case that's supposed to be tried six months from now and you settle now by settling today and letting you in the market 30 days from now that's far more competitive than if you litigated and beat the patent and you on in a year and yet if the settlement gave you that right to come in a week from now or a day from now with an exclusive license it would violate the statute. We're missing each other here but I'm still not and maybe Judge Okuda will be kind to give you another minute at the end but I'm still not clear why this exclusive licensing agreement violates the statute. I can't agreed to do any of the things that sub B forbids. Because unless the branded company simply says I'm not going to defend the patent you can come in today which is not the way in which any settlement works you can't have that type of settlement but your honor I see my time is running I just want to make the point that to the extent that this statute is regulating and making the object of its conduct out of state I think as the court seems to recognize that would create a dormant commerce clause problem. I understand the question is are the affidavits do they do they give rise to the immediacy and I think the economic harm that we face is the same harm that we face that the trappers face. Because there is this law that restricts certain types of activity we are forced to spend more money litigating these cases. The Zytus affidavit actually discloses a list of ongoing patent cases. Okay you're over time we'll give you a minute for rebuttal. We'll hear from the other side. Thank you. Good morning your honors may it please the court Carly Eisenberg on behalf of the California Attorney General Javier Becerra. Your honors I'd like to begin by describing what AB 824 is and what it does not do. AB 824 is an evidentiary burden shifting statute. It represents a modest but important change to California's antitrust laws. It does not ban settlement agreements nor does it force pharmaceutical companies to litigate cases to judgment. AB 824 merely creates rebuttable presumptions and there is nothing unlawful or unconstitutional about a state legislature creating such an agreement. They'll be presumed to have an anti-competitive effect and shall be a violation of this section. So that seems to be more than an evidentiary presumption and how do you explain that? You're right your honor it does impose penalties which makes it somewhat distinct from the Cartwright Act because it has additional. So it's not merely shifting the burden. Well it correct but under federal antitrust law and state antitrust law these reverse payments are already unlawful. We know that from the activist case and the Cipro case. No we don't know that from activists. What we know from activists is that they might be unlawful if they violate the rule of reason. We know that that somebody could prove that in a particular case it's an unreasonable settlement but they're not per se unlawful are they? Correct your honor Judge Hurwitz I misspoke. It's just I meant to point to activists and to the extent that the patents are not immune from antitrust scrutiny was the holding from activists. I'd like to begin with a demonstrated concrete and particular harm that's actual or imminent. As your honors pointed out their declarations are woefully inadequate in terms of identifying a single settlement agreement, a single piece of litigation, or any type of ongoing negotiation that's been impacted by AB 824. I think the district court got it right at ER 11 when it said this would be a completely different case had they made any type of those allegations and the that's why the district court denied the preliminary injunction without prejudice. It's not to foreclose AAM from ever forever from challenging AB 824 but it's based on the decision that they made in bringing six nearly identical declarations on a pre-enforcement challenge that are that do not can't contain specific facts showing concrete and particularized harm that's imminent. Lujan says these someday intentions are without a description of a concrete plan is simply not imminent injury and so is it you in your view did they lack standing or simply did they fail to demonstrate immediate sufficient immediate harm to get a preliminary injunction? Your honor I think it's both in this court's case and well if it's both if it's both shouldn't a district judge have dismissed the case if there's no standing you can't continue to litigate. You're right and on that point we do disagree with the district court the district court said that the AAM had standing based on the fact that they were in current litigation and that there was potential financial monetary penalties and we think that that holding was erroneous for the reasons that your honors mentioned that first off the penalties would incur by invoking a speculative chain of events none of which no point of that chain has been should have been dismissed or if we send it back to the district court one way or another and Mr. Lefkowitz got a more artfully worded declaration from one of his clients which said we're now in settlement negotiations with we look we're trying to settle a case and we'd like to propose one of these reverse payouts but we're scared to because well we won't because we know if they accept it we'll then have have to litigate the with the with a 20 million dollar to establish standing your honor I do think that brings them within the imminence that's required for okay so so so what should I have no doubt he'll he's able to gin up one of those affidavits if he has to should we just should we send it back to the district court and say you're right but he will have standing if he does this or what should we do in this case I think that that's correct I think it would be affirming the district courts denial of the preliminary injunction or separately concluding that sua sponte review in terms of jurisdiction has unveiled that a.m. hasn't satisfied article 3 jurisdiction but it doesn't preclude a.m. from potentially amending its complaint and doing so at the district court level I think that if we dismiss if we say it should be dismissed for lack of jurisdiction we can discuss the preliminary injunction right I think that's correct your honor that would be right yeah that's why that's what I was asking and if we dismiss for lack of jurisdiction maybe he can refile and correct the problem but I don't think we can remand to the district court and say maybe he can fix his jurisdictional problems and can't believe you well I think that what's what's interesting is that they never obtained an injunction from either the court so that we have the benefit of seven months of a b8-24 actually having taken effect so we actually know how a b8-24 has impacted these pharmaceutical companies and to the extent the courts interested in extra record evidence it would demonstrate that no I'm not I'm not and the problem is we don't know because there is no evidence that's one of the problems see that's why I think it's likely that somebody if we said we agree with the state if only the I have a plan of entering into this kind of settlement but it's been aborted because of the California statute you say that's probably enough to give them standing and raise the issue aren't we surely going to get one of those affidavits back I don't think that that's certain your honor I think that a.m. has had the district court denied the preliminary injunction without prejudice so since that denial a.m. could have brought a new motion for a preliminary injunction with new declarations attached that would have the district courts concerns with with regard to ripeness and we've not seen a and take those actions in the district court and to be clear a.m. can bring a pre-enforcement challenge they they could put forth the facts that you all are talking about and satisfy this courts both the injury in fact part of the analysis and the ripeness part of the analysis as well it's just based on the current record that's before the court they haven't done so and I can I ask you a question on a different topic yes um does the does California intend to enforce this statute in the case of agreements made out of state your honor the statute is very clear that it's tied to sales of a pharmaceutical product and that's in California a.m. would have this court read that language out of the the law or a description of the statute I'm asking you whether or not the Attorney General can tell us whether or not he intends to enforce this law with respect to agreements made outside the borders of California consistent with long-standing antitrust principles the California Attorney General will enforce the statute that is tied to in-state sales that are made that are wrongful of monopolistic prices now as this court held in Neville Bard the conduct complained of that antitrust behavior is not just those depressed prices or monopolistic prices in California but it's aware those bad actors of your answer to my question is yes to the extent that people who enter into these agreements later make sales in California you will enforce this statute against them your honor yes that's consistent with how antitrust law has long been I'm not looking for the legal argument because one of the issues in the case that deals with standing is if the AG were to say no no we don't intend to enforce this against out-of-state agreements we'd have no dormant commerce clause problem I think but you're saying we do intend to enforce it whether or not that creates a dormant commerce clause problems a separate issue I just want to find out your intentions yes I think that we need to follow the plain language of the statute which ties the agreements to the sales and so the Attorney General plans to enforce the statute for those in-state sales and repeatedly held that a state can legislate in-state sales that's the foie gras case the shark fin case even Rocky Mountain in terms of fuel consumed by California consumers there were two parts of the statute and the part of the statute that dealt with in-state sales no one disputed California had the I think your honors decision in the shark fin case is illustrates that the California legislature when it even though a statute may not have a geographic limitation that's certainly how this court has interpreted statutes the very first line of the Chinatown case describes the California statute as the unlawful that it being a moth for any person to possess sell offer for trade sale or trade the distribution of a shark fin close quote and then this it prohibits agreements in connection with the sale of pharmaceutical product in California and this is consistent where does tell me where it says that what does it say in California the in California does not appear in the statute what just like it did not appear in the shark fin statute at issue but exactly how this court construed that statute and that's consistent with how this court construes statutes and indeed the California law I understand that you kept saying it's exactly what the statute says but it doesn't say that does it I'm sorry it does say in connection with the sale of pharmaceutical product close quote and I'm saying that it's with regard to in California and in your brief you said that California courts take the position that there's a presumption that the laws apply extraterritorially so does that apply to agreements because you're saying no it does that it is that the extraterritoriality of where the agreements took place don't matter the only thing that matters is where the sales take place can you explain how your understanding of how California law applies there right well I think that presumption is in looking at the statute and so we would urge this court to follow those California cannons of construction but I think can but in commerce clause the federal question following Neville Bard is completely consistent with the interpretation we're acting asking the court to apply here in terms of California being concerned about agreements to sell to California consumers or agreements not to sell to California consumers so it's that direct nexus to California consumers and it's with regard to change prices in California that the California legislature was concerned about and it's just the statutory text and the cannons that support that but the California legislative history dictates that the legislature was concerned about sales and costs and that's reflected at SER 3, 4, and 5. Opposing counsel says Neville Bard is distinguishable because in that case there was substantial in-state activity you agree with that? I disagree with the characterization because I think what it's reflected on page 990 and 991 of the decision is the court concluded that the actual rigging of the prices so the bad actors and the bad behavior was actually in Wisconsin with the cheesemakers but the conduct in terms of the sales was in California and so this court held that the Cartwright Act applied not just to the sales in California but applied to that conduct in Wisconsin where the rigging actually took place so I think it's entirely consistent and if this court had any doubts the Seventh Circuit and In re brand name came to the exact same outcome a decision by Judge Posner about applying Alabama antitrust law and even the decision cited by AAM in its reply brief that In re La Raza Pam a DC District Court case there too they said the Illinois Antitrust Act applied not only to acts wholly within the state but acts that occurred outside the state when it came to the antitrust law. Well I've read the Seventh Circuit opinion it didn't say it applied to acts wholly outside the state it said it said it can apply to acts outside the state if there are acts in the state. My question is what does Sam Francis do to your argument? There's broad language in Sam Francis quoting the Supreme Court that says the state lacks the ability under the Commerce Clause to regulate conduct that occurs entirely outside of the state. Why isn't the conduct you're regulating here the entering into the agreement not the subsequent sales? There's nothing in the statute about the sales it's only about entering into the agreement. Your honor I would disagree with that the first line of the statute talks about the sales and the regulation of the agreement is in connection with the sale it's at section 134002A1 it specifically says with the sale of a pharmaceutical product and so I and as Sam Francis noted this see I only read that to describe the limited field that you were talking about which is pharmaceutical products as opposed to others. Is there anything in this statute that see the statute seems to regulate the entering into the agreement doesn't it? Not the not the subsequent marketing in California. Your honor we would urge the court to follow Rosenblatt and this court's canons of construction in the California canons of construction and to include in the interpretation that the sale of a pharmaceutical product is within California. Your honors I see my time is up. We would ask that the court risk we respectfully request that this court affirm the district courts opinion. We thank you for your argument we'll give you a Mr. Lefkowitz a minute for rebuttal. Okay I'll be brief then and I want to say I'm very happy to be able to agree with you Judge Hurwitz. The Knievel-Bard case makes very clear and relies on the fact that some of the unlawful conduct under the Cartwright Act was the purchases of the bid rig cheese by the defendant in the state of California. The sales of pharmaceuticals within the state of California. In Knievel-Bard it was the purchases and in this case opposing counsel says it's the sales isn't that the same thing? No because this statute unlike the Cartwright Act doesn't regulate the sales. The sale might be a trigger they might say contra to the language of the statute which has a twenty five twenty million dollar penalty even if there's no sale in California. They might say we won't use the statute if there isn't a sale but that doesn't matter. You have to look at what is the object of the regulation. The object of the regulation is the entering into of the settlement. If I enter into a settlement and the settlements in Delaware and California says that act of the Constitution. They've told us that that's how they are going to interpret this and implement it and I think at this point our injury is per se and it's immediate and I would say your honor that if you look at the Knievel-Bard case the reason that they could decide that case and then Sam Francis could decide the way it came out consistent with Healy and Baldwin and Baldwin of course required a sale within the state was because you have to focus on what is the actual conduct that violates the law. Okay, well over your time I think we have your argument. We appreciate both parties argument in this interesting case and the case of Association for Accessible Medicines versus Xavier Becerra is submitted and that's your argument in Andrew Dorman versus Intuit Inc.
judges: Ikuta, Hurwitz, Tagle